IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROSALIE BOYER-HINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV1222 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rosalie Boyer-Hinson, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on July 6, 2009, alleging a disability

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

onset date of September 5, 2008. (Tr. at 9, 128-35.)[2] Her applications were denied initially (Tr. at 50-51, 54-61) and upon reconsideration (Tr. at 52-53, 65-82). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 83-84), which she attended on April 14, 2011, along with her attorney (Tr. at 9). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 17), and on September 21, 2012, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since September 5, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: dysfunction of a joint; right rotator cuff syndrome; disorder of the spine; and affective disorders (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #10].

defined in 20 CFR 404.1567(b) and 416.967(b) except that she is able to lift up to 20 pounds occasionally and lift up to 10 pounds frequently; and she can perform simple, routine, repetitive tasks, with no detailed instructions.

(Tr. at 11-12.)

Although the ALJ found that Plaintiff's residual functional capacity ("RFC") precluded her from performing any of her past relevant work, he further determined, based on Plaintiff's age, education, work experience, and RFC, that Plaintiff retained the ability to perform other jobs that exist in significant numbers in the national economy. (Tr. at 17.) He therefore concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Id.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments."  Hines, 453 F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date.  Plaintiff therefore met her burden at step one of the sequential analysis.  At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:  dysfunction of a joint, right rotator cuff syndrome, disorder of the spine, and affective disorders.  (Tr. at 11.)  The ALJ found at step three that none of these impairments met or equaled a disability listing.  Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further restrictions to simple, routine, repetitive tasks and no detailed instructions.  (Tr. at 12.)  Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to her past relevant work.  (Tr. at 16.)  However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs available in the community and was therefore not disabled.  (Tr. at 17.)

Plaintiff now challenges the ALJ's failure to consider her alleged "mental impairment involving her difficulty reading, spelling and using math." (Pl.'s Br. [Doc. #14] at 5.) She contends that the lack of limitations regarding this impairment rendered the RFC inaccurate and precluded the ALJ's reliance on the Social Security Administration's medical-vocational guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, at step five. Plaintiff concedes that no objective medical evidence supports her allegations of intellectual impairment, but she argues that her testimony as to a limited education and difficulties with reading, writing, and math "raised a suspicion of intellectual impairment" which required the ALJ to order a consultative examination. (Pl.'s Resp. Br. [Doc. #18] at 1-2) (citing Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996)).

However, the decision to order a consultative examination is within the discretion of the Commissioner. Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003). A hearing officer "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Development of the record may include ordering consultative examinations "when evidence as a whole, both medical and nonmedical, is not sufficient to support a decision." 20 C.F.R. § 404.1519a(b). However, "that does not mean that 'a remand is warranted any time the claimant alleges that the ALJ has neglected to complete the record.'" Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, at *8 (D. Md. Dec. 14, 2009) (unpublished) (quoting Brown v. Shalala, 44 F.3d 931, 935 n.9 (11th Cir. 1995)); see also France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000) ("[T]he ALJ does not otherwise have an obligation to

7

obtain additional information if the record is adequate to make a determination regarding a disability claim.").

> The Fourth Circuit has held that a case should be remanded for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, *and* such failure is prejudicial to the claimant . . . ." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)(emphasis added). "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." Ripely v. Chater, 67 F.3d 552, 557 n. 22 (5th Cir. 1995). If a plaintiff fails to show that he/she was prejudiced by the ALJ's failure to develop the record, remand is not warranted.

Zook v. Commissioner of Social Sec., No. 2:09cv109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010)(unpublished)(brackets and ellipses in original); see also Bell v. Chater, 57 F.3d 1065, 1995 WL 347142, at *5 (4th Cir. 1995)(unpublished)(finding no reversible error where Plaintiff "failed to indicate how . . . unidentified [medical] reports would have impacted the ALJ's assessment"); Scarberry v. Chater, 52 F.3d 322, 1995 WL 238558, at *4 n.13 (4th Cir. 1995)(unpublished)(ruling that "ALJ had before him sufficient facts to determine the central issue of disability" where the plaintiff's attorney failed to "identify what the missing evidence would have shown").

In the present case, Plaintiff's disability reports and testimony indicate that she has a ninth or tenth grade education in "special classes" and did not complete her GED due to pregnancy. (Tr. at 45, 198.) Plaintiff described her reading as being at "a fifth or sixth grade level" and her spelling as poor, and the errors in her self-completed reports bear out these assertions to some degree. (Tr. at 45, 189, 195, 196.) However, she also testified that she does crosswords as a hobby (Tr. at 13, 33) and suggested that her impaired vision and concentration, rather than intellectual problems alone, led to some of her reading difficulties

8

(Tr. at 45, 46-47). With respect to the self-completed reports submitted in this case, although Plaintiff's answers include some spelling errors, they nevertheless reflect the ability to read the questions and write appropriate, detailed answers. Similarly, despite her alleged difficulties with math, Plaintiff indicated that she could do basic math, get change at a store, pay bills, handle a savings account, and use a checkbook. (Tr. at 46, 194.) In fact, she previously worked as a cashier. (Tr. at 16, 184.) In terms of Plaintiff's functional abilities, the ALJ noted that Plaintiff can drive without difficulty and has raised five children, one of whom was still a minor living at home at the time of the hearing. (Tr. at 13-15, 26, 44.) In short, even when viewed in the light most favorable to Plaintiff, the evidence suggests that her alleged intellectual problems interfered minimally, if at all, with her ability to perform basic work activities, and would not indicate the need for a consultative examination on this issue.

Significantly, the ALJ also found "no indication that [Plaintiff] has sought any mental health treatment," and he specifically noted that both of the medical consultants to review Plaintiff's mental condition concluded that she has no medically-determinable mental impairment. (Tr. at 11-12.) Nevertheless, he credited Plaintiff's testimony to some degree by finding her limited to simple, routine, repetitive tasks. In addition, "[d]ue to her alleged pain," the ALJ further restricted Plaintiff from performing jobs involving detailed instructions. (Tr. at 12, 16.) Plaintiff never indicates what, if any, further restrictions her alleged intellectual impairment could potentially merit. Accordingly, Plaintiff's argument that her case be remanded for failure to develop the administrative record is without merit. Plaintiff fails to demonstrate (1) that the ALJ had insufficient facts before him to determine

the central issue of disability or (2) how a consultative exam would have impacted the ALJ's assessment. As such, substantial evidence supports the ALJ's RFC assessment as written.[5]

In a related argument, Plaintiff contends that, because she has nonexertional as well as exertional impairments, the ALJ was precluded from applying the grids at step five of the sequential analysis in lieu of vocational testimony. At step five, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[6] the ALJ may apply the grids to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). In other words, if a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). If, on the other hand, the claimant suffers from significant nonexertional limitations,[7] the grids are not determinative, and the ALJ must

---

[5] Plaintiff also notes that the ALJ included "affective disorders" as a severe impairment at step two, but then found that Plaintiff "has no medically determinable mental impairment." (Tr. at 11-12.). In response, Defendant contends that the inclusion of affective disorders as a severe impairment in the ALJ's step two heading is clearly a scrivener's error. (Def.'s Br. [Doc. #17] at 3 n.1.) In support of this contention, Defendant notes that the explanatory paragraphs following the ALJ's step two finding twice state that Plaintiff "has no medically determinable mental impairment." (Tr. at 11-12.) Cf. Moore v. Astrue, 2008 WL 216605 (D.S.C. Jan. 24, 2008). In any event, the RFC determination included limitations to simple, routine, repetitive tasks, with no detailed instructions, and Plaintiff does not contend that there are any medical opinions or records reflecting any basis for including any other limitations as a result of any affective disorders. In the circumstances, it appears that Plaintiff's contentions regarding the inclusion of "affective disorders" in the step two heading would not affect any of the substantive analysis of Plaintiff's actual claims.

[6] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

[7] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

consider vocational expert testimony. McLain, 715 F.2d at 870 n.1. However, not every nonexertional limitation is significant; "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C. 2010).

In this case, the ALJ considered the RFC and concluded that if Plaintiff had the capacity to perform the full range of light work, a finding of "not disabled" would be directed by the grids. The ALJ further found that "the additional limitations have little or no effect on the occupational base of unskilled light work" and that the "limitations delineated in the residual functional capacity assessment above in this decision would not erode the light occupational base to a significant degree and would allow the claimant to perform a wide range of light level work." (Tr. at 17.)[8] Plaintiff does not appear to specifically take issue with this conclusion with respect to the RFC as written, and instead it appears that Plaintiff's step five challenge relies on an alleged failure to include any limitation involving her alleged difficulty reading, spelling and using math in formulating Plaintiff's RFC. Specifically, Plaintiff contends that the ALJ erred because he "did not even consider her

---

[8] Cf. Jaynes v. Colvin, No. 1:12CV168, 2014 WL 319243, at *4 (M.D.N.C. July 08, 2014; Smith v. Colvin, No. 3:13CV570MOC, 2014 WL 2159122, at *4 (W.D.N.C. May 23, 2014); Livingston v. Colvin, No. 3:13CV233MOC, 2014 WL 496484, at *6 (W.D.N.C. Feb. 6, 2014) ("Plaintiff argues that the ALJ finding that her RFC for light work was limited to SRRTs prevented the ALJ from relying on the Grids in determining whether work existed in significant numbers in the national economy that she could perform. . . . A limitation to SRRTs does not prevent an ALJ from relying on the Grids."); Scott v. Colvin, No. 1:12CV170RJC, 2013 WL 3927607, at *6–7 (W.D.N.C. July 29, 2013); Lewandowski v. Astrue, No. 1:07CV1777DLB, 2008 WL 4736788, at *8 (E.D. Cal. Oct. 28, 2008) ("[T]he ALJ determined that [the] [p]laintiff could perform a significant number of jobs in the national economy. In this regard, he determined that her non-exertional limitation to simple, routine tasks had little or no effect on the occupational base of unskilled light work. The ALJ was entitled to make this determination." (internal citation omitted)).

reading, writing and mathematical deficits when assessing her RFC and therefore incorrectly used the grids to find her disabled." (Pl. Br. [Doc. #14] at 5.) However, as discussed above, substantial evidence supports the ALJ's decision with respect to Plaintiff's alleged mental impairments, and the evidence in the record would not require the inclusion of additional limitations based on alleged reading, writing, or mathematical deficits. In sum, the ALJ's step five determination is supported by substantial evidence, and the failure to include limitations regarding an alleged difficulty reading, spelling, and using math does not constitute error requiring remand in this case.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #13] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #16] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of February, 2015.

        /s/ Joi Elizabeth Peake
        United States Magistrate Judge